

| | | |
|---|---|---|
| **MICHAEL A. CARDOZO**<br>*Corporation Counsel* | T**HE** C**ITY OF** N**EW** Y**ORK**<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY  10007 | **DOUGLAS W. HEIM**<br>*Assistant Corporation Counsel*<br>(212) 788-1298<br>(212) 788-9776 (fax)<br>dheim@law.nyc.gov |

August 20, 2008

**BY ECF AND HAND DELIVERY**
Honorable Ramon E. Reyes
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Lavaud Desmoulins, et al. v. City of New York, et al., 08-CV-0086 (BMC)(RER)

Your Honor:

As the Assistant Corporation Counsel Representing defendants City of New York ("City"), Sergeant Joel Dickerman ("Dickerman"), Police Officer Windza Francois ("Francois") and Police Officer Anthony DiMichele ("DiMichele") in the above-referenced matter, I write to respectfully request: 1) that plaintiffs Ashley and Lutetia Desmoulins's claims be dismissed unless an attorney is either retained within 30 days or counsel is appointed to represent them; 2) that a guardian ad litem be appointed for plaintiff Lavaud Desmoulins pursuant to Fed. R. Civ. P. 17(c); 3) that the Court schedule a conference regarding the appointment of counsel and guardian ad litem for plaintiffs and further order Frandcise Desmoulins, as, upon information and belief, the wife of plaintiff Lavaud and the mother of infant plaintiffs Lutetia and Ashley to attend such a conference as a potential next friend or guardian ad litem; and 4) that discovery be stayed in this matter until a decision regarding all three plaintiffs' competency to litigate this action has been reached.[1]

> **A.     Plaintiffs Ashley and Lutetia's Claims Should be Dismissed Unless an Attorney is Retained or Appointed on their Behalf.**

It is well established in this Circuit that a non-attorney parent may not bring an action pro se in federal court on behalf of his or her minor child.  See Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005)(holding that a mother could not represent her son in action where she represented her own claims pro se); Murphy v. Arlington Cent. Sch. Dist. Bd.

---

[1] This application is submitted via ECF without exhibits, given the sensitive medical nature of their contents and pursuant to New York State Law and the Privacy Rule of Health Insurance Portability and Accountability Act of 1996 (HIPPA).  A copy with exhibits will follow by hand delivery to the Court and first class mail to plaintiff.

of Educ., 297 F.3d 195, 201 (2d Cir. 2002) ("In this Circuit, a non-attorney parent is precluded from representing his or her child in federal court."); Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 124 (2d Cir. 1998); Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990). In Cheung, the Second Circuit stated that "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child," and that the "choice to appear pro se is not a true choice for minors who under state law . . . cannot determine their own legal actions." Cheung, 906 F.2d at 61. In fact, the Second Circuit has held that when it is apparent to a court that a lay person is suing on behalf of a minor, the court has a duty to protect the child by enforcing, sua sponte, the prohibition against unauthorized representation. Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 125 (2d Cir. 1998)(per curiam), cert. denied, 526 U.S. 1025 (1999).

Where appropriate, a district court may appoint counsel to represent minors whose parent has commenced a pro se action on their behalf. Cheung, 906 F.2d at 61. A determination on the appointment of counsel must be made before deciding any other issues in the case. Id. at 62. If the district court declines to appoint counsel and if the non-attorney parent is unable to retain counsel, the complaint should be dismissed without prejudice. Id.

There is no right to have counsel appointed in a civil case. Simons v. Lycee Francais de New York, 03 Civ. 4972 (LAK) 2003 U.S. Dist. LEXIS 17644 at *3, n.2 (S.D.N.Y. Oct. 7, 2003). Courts possess broad discretion when determining whether appointment of counsel for civil litigants is appropriate, "subject to the requirement that it be 'guided by sound legal principle.'" Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir. 1983)).

As a threshold matter, a district court must first determine whether the indigent litigant's position "seems likely to be of substance," before determining whether an appointment of counsel in appropriate Wenger, 146 F.3d at 125. If the litigant's claims meet this "threshold requirement," the court should consider the factors set forth in Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986). See Wenger, 146 F.3d at 125. Where the determination of whether appointment of counsel is necessary involves a party who is unable to represent themselves because they are minors, the court should consider the fact that, without appointment of counsel, the case will not go forward at all. Id. However, even if the failure to appoint counsel might result in a minor's claims being dismissed, the appointment of counsel is not required when it is clear that no substantial claim might be brought on behalf of the minor. Id.; see Cheung, 906 F.2d at 62.

This action commenced on January 1, 2008, with Brett Klein, Esq. serving as counsel to plaintiffs Lavaud, Lutetia, and Ashley Desmoulins. The original complaint claimed inter alia, that plaintiff Lavaud was falsely arrested and subjected to excessive force, while plaintiffs Lutetia and Ashley's due process rights were violated in being taken into Administration for Children's Services ("ACS") custody overnight. According to plaintiff Lavaud, on May 23, 2008, he "figured out that he [Mr. Klein] and his office have been deliberately building the Desmoulins' [sic] civil rights action, not only for the benefit of the party adverse by weakening its value in extracting the repugnant criminality obviously linked to the

civil rights action but also for their own benefit." (See Docket Entries #12 and 13, Letter from plaintiff Lavaud to the Court).

Thereafter, on May 30, 2008, the Court granted Mr. Klein's application to withdraw as the attorney for plaintiffs Lavaud, Ashley, and Lutetia. Plaintiff Lavaud indicated that he intended to represent himself and his daughters, plaintiffs Ashley and Lutetia, pro se. (See Docket Entry #12, "Exhibit Signed Letter"). Plaintiff Lavaud then filed the Amended Complaint, not only on his behalf, but on the behalf of the infant plaintiffs Ashley and Lutetia. (See Docket Entry #16, the Amended Complaint). However, upon information and belief, plaintiff Lavaud is not admitted to practice law in the New York State.

Defendants concede in the case at bar that plaintiffs Ashley and Lutetia, who are presently upon information and belief, 7 and 4 years old respectively, cannot litigate claims under 42 U.S.C. §1983 for themselves. However, defendants' respectfully submit that Ashley and Lutetia's claims under 42 U.S.C. §1983 are attenuated at best. The Amended Complaint alleges that Ashley and Lutetia (5 and 2 years old at the time of the incident) were held against their will in Administration for Children Services ("ACS") and ("NYPD") custody overnight from October 12, 2006 to October 13, 2006, "although two adult relatives came to pick them up" the night of the incident. (See Amended Complaint at ¶31). Without delving into a larger discussion of the merits, it is undisputed that plaintiff Lavaud had been placed under arrest and that Ashley and Lutetia's mother was unavailable at the time of the arrest to pick up the children before the Ashley and Lutetia were taken into custody.

Both parents and children have a general liberty interest in companionship, custody an care. See e.g., Stanley v. Illinois, 405 U.S. 645, 649-58 (1972)(holding that parents have a liberty interest in child custody); Duchesne v. Sugarman, 566 F.2d 817, 824-25 (2d Cir. 1977) (detailing that a reciprocal liberty interest protected by the Fourteenth Amendment in the preservation of family integrity). However, such a right is not absolute as it is "equally well established that officials may temporarily deprive a parent of custody in 'emergency' circumstances 'without parental consent or a *prior* court order." Robinson v.Via, 821 F.2d 913, 921-22 (2d Cir. 1987)(quoting Duchesne, at 826). It is clear that there is a sufficient emergency to warrant taking children into custody where a child is immediate threatened with harm or bereft of adequate care. Robinson, at 921-22 (granting a state trooper qualified immunity where he took children into custody in an emergency situation without consent or prior court order).

Hence, given the undisputed facts in the case at bar, even if plaintiff Lavaud's arrest was not privileged, it is unlikely that plaintiffs Ashley and Lutetia will be successful in their only claim against defendants. As such, defendants respectfully request that Ahsley and Lutetia's parents be given 30 days to find an attorney, or face dismissal of their claims without prejudice in this action. Alternatively, if the court is inclined to appoint an attorney on Ashley and Lutetia's behalf, defendants respectfully request that discovery be stayed in this matter until such an appointment has been made.

**B.     Appointment of a Guardian Ad Litem for Plaintiff Lavaud**

Appointment of a guardian ad litem, while within the broad discretion of the court under Fed. R. Civ. P. 17(c), is not undertaken lightly. Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 651-52 (2d Cir.1999) (discussing the procedural safeguards necessary before appointing a guardian ad litem because of the stigma attached to a finding of incompetency and the impact of such a finding on the interest of the litigant in maintaining control over the litigation).

Fed. R. Civ. P. 17(c)(2) provides, in relevant part:

> "A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."

Fed. R. Civ. P. 17(c) gives Courts "no guidance regarding the circumstances that warrant a competency inquiry, or whether a pro se plaintiff should receive special consideration under the rule. Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 200-201 (2d Cir. 2003). However, the Second Circuit has noted that "absent actual documentation or testimony by a mental health professional, a court of record, or a relevant public agency, the district court is *not required* to undertake an inquiry into a pro se litigant's mental capacity." Id. at 201 n.4 (emphasis added). However, courts have also emphasized that, "[e]ven in the absence of an inquisition of insanity or of a commitment, where a person is incompetent courts generally have inherent power to protect the interests of the incompetent by appointing a guardian ad litem to represent the incompetent in proceedings." Zaro v. Strauss, 167 F.2d 218, 220 (5th Cir. 1948)(internal citations omitted).

In fact, both represented and pro se plaintiffs have appealed dismissals of their cases on the basis that a district court failed to make a determination as to whether they were competent to proceed. In Jacobs v. County of Westchester, a represented plaintiff appealed the dismissal of his case with prejudice for failure to prosecute on the grounds that the district court abused its discretion when it failed to sua sponte inquire into his mental competence to litigate. Jacobs, 2005 U.S. App. LEXIS 19523 at *1-4 (2d Cir. Sept. 7, 2005). In that circumstance, the Second Circuit found that the evidence before the district court (a letter the plaintiff's former attorney asserting that Jacobs was "totally incoherent" and the fact that the plaintiff was confined to a prison psychiatric ward), was not sufficient to trigger a duty to appoint a guardian ad litem sua sponte, but was sufficient for the district court to be required to consider plaintiff's competency before dismissing for failure to prosecute. Id.

Similarly, in Krain v. Smallwood, the Ninth Circuit reversed and remanded a dismissal for failure to prosecute where a magistrate judge determined that while a substantial question existed regarding the plaintiff's competency to proceed pro se, there was no evidence on the record to warrant such a determination and therefore the case could be dismissed for failure to prosecute. Krain v. Smallwood, 880 F. 2d. 1119, 1121 (9th Cir. 1989).

The court in <u>Bowen v. Rubin</u>, set forth the procedure for determining whether individuals have the capacity to sue on their own behalf in the context of claims under 42 U.S.C. §§1985,1986.  <u>Bowen v. Rubin</u>, 213 F. Supp. 2d 220, 223-24 (E.D.N.Y. 2001).  State law provides the controlling authority for determining whether an individual has capacity to sue on his own behalf. <u>Id.</u> at 21 (E.D.N.Y. 2001)(citing <u>Thomas v. Humfield</u>, 916 F.2d 1032, 1034-35 (5th Cir. 1990) (finding state law the proper source for determining whether an individual is incompetent and in need of a guardian ad litem under Rule 17(c); <u>Neilson v. Colgate-Palmolive Co.</u>, 199 F.3d 642, 656-57 (2d Cir. 1999) (noting that capacity to sue is determined by reference to state law, and discussing the capacity of a representative to sue in federal and state proceedings)).   The <u>Bowen</u> Court held that under New York law an adult incapable of adequately prosecuting or defending his rights should have a guardian appointed on his behalf. <u>Id.</u> (citing N.Y.C.P.L.R. § 1201).

In <u>Bowen</u>, the Court determined that the party seeking appointment of a guardian must show by a preponderance of the evidence that the individual's condition impedes their ability to protect their rights.  <u>Id.</u> (internal citations omitted).  To that end, a person may be of unsound mind and still be competent to sue, or the opposite – the issue is whether the person in question is capable of adequately prosecuting their rights, regardless of whether any formal adjudication of incompetence has been made.  <u>Id.</u>  Other courts have adopted the <u>Bowen</u> approach, at least in part because it mirrors the federal standard for competency to waive civil right or stand trial.  See <u>Makas v. Holanchock</u>, 02-CV-00836 (JKS) 2007 U.S. Dist. LEXIS 41520, *18-20 (N.D.N.Y June 7, 2007)(finding that there was no basis to question the plaintiff's competency on the record).

In the case at bar,  on May 30, 2008, the Court granted Mr. Klein's application to withdraw as the attorney for plaintiffs Lavaud, Ashley, and Lutetia, and plaintiff Lavaud then filed an Amended Complaint, purportedly not only on his behalf, but on the behalf of the infant plaintiffs Ashley and Lutetia.  (<u>See</u> Docket Entry #16, the Amended Complaint).  Relevant to the inquiry at hand, the Amended Complaint alleges the following:

- On June 25, 2006, someone broke into plaintiffs' home and stole fifteen thousand ($15,000) dollars in cash from plaintiff Lavaud's closet and in the "spring of 2006," his wife had been harassed by unknown persons. (Amended Complaint, at ¶¶17-18).

- However plaintiff Lavaud did not report either purported crime to the NYPD, but instead investigated by "(1) acting like nothing ever happened, (2) keeping his wife unaware of the crime, and (3) watching for unusual activities and her family members…" (<u>Id.</u>, at ¶18).

- An unnamed "credible source" told plaintiff Lavuad, 'some big white men in this city (NYC) had some big interests in his home and his activities,' and that they were 'plotting something big' against the plaintiff and his family.' (<u>Id.</u>).

- However plaintiff Lavaud, accompanied by plaintiffs Ashley and Lutetia first reported these alleged crimes on October 12, 2006, nearly four months later. (Id., at 21).

- Following plaintiff Lavaud's arrest, he was tortured by "at least four middle-aged Jewish female doctors, plus Dr. SILVERBERG[sic]," requested the FBI, and "denounced a threat upon him by a Jewish woman, by the name of NANCY MORF[sic] – a claim examiner for Gab Robins and Arch Insurance, in 2003, that vowed to ruin his life…" (Id. at 24).

On June 25, 2008, plaintiff reiterated largely the same facts to the Court and defense counsel at a status conference. At the June 25, 2008 status conference, the Court ordered that plaintiff's medical records would be subpoenaed from various hospitals related to plaintiff's allegations and claims.

However, on July 1, 2008, plaintiff Lavaud moved for the Honorable Brian M. Cogan, U.S.D.J., to recuse himself from this matter on the grounds that plaintiff "believes the United States District Judge, Mr. BRIAN M. COGAN, is a Jewish or/and has a strong Jewish Background," and that "Judge BRIAN M. COGAN works for STROOK & STROOK & LAVAN LLP, which is a prominent New York City based and is originally a Jewish law firm." (See Docket Entry #22, Notice of Motion for Hearing, ¶¶2,4). On July, 14, 2008 Judge Cogan denied plaintiff's application. (See Docket Entry #26). Yet, on August 6, 2008, plaintiff filed a notice of interlocutory appeal of Judge Cogan's decision refusing to identify whether he is Jewish or recuse himself from this action. (See Docket Entry #34).

It also bears noting that plaintiff e-mailed defense counsel and the Corporation Counsel, himself Michael A. Cardozo on August 1, 2008, asserting:

> " It is very significant, suspicious, frivolous, and inacceptable the fact that you were the one that handed to plaintiff LAVAUD HOLD DESMOULINS [in the court room of Judge RAMON REYES(08/01/2008)] a copy of his medical records, which were subpoenaed by the Magistrate Judge upon the plaintiff's request, from Bellevue Hospital…. In addition, you are believed that you modified the contents of the records before the plaintiff had access to it; and you plan to continue to do it with the remaining subpoenaed records coming from Kings County Hospital and NYPH/Columbia. Plantiff LAVAUD HOLD DESMOULINS is serious about it and is going to forward this complaint, with additional reasons or facts, to district presiding Judge COGAN and to the Justice Department in order to grant the plaintiff a Change of Venue that he will very soon request…."

(See Exhibit "A," attached hereto).

Defense counsel categorically denies plaintiff Lavaud's allegations as baseless and harassing, however the larger issue is that plaintiff has clearly demonstrated a delusional view that everyone is conspiring against him.

Plaintiff's paranoia is further evidenced by his medical records. Kings County Hospital Center records as provided by plaintiffs' former attorney Mr. Klein indicate that plaintiff complained that "a Jewish woman tried to kill him and he wants to talk to the FBI;" that he was diagnosed "psychosis;" and was treated with "Haldol" an anti-psychotic drug immediately following the incident. (See Exhibit "B, " attached hereto).

Further, New York-Presbyterian Hospital records indicate the following:

- On May 29, 2008, plaintiff Lavuad told medical personnel that he felt police were trying to "assassinate" him at the hospital. (See Exhibit "C-1,"attached hereto).

- On June 16, 2008, plaintiff Lavaud told medical personnel that his lawyer is "trying to lose the case for him;" and medical personnel noted that plaintiff keeps "thinking that everybody is trying to somehow get him or prevent him form getting proper care." (See Exhibit "C-2,"attached hereto).

- On June 24, 2008, plaintiff Lavuad was described as "very paranoid" and noted that plaintiff Lavaud stated. The records indicate plaintiff said, "[t]here is a conspiracy against me;" asserted that his lawyer and treating physician are "politicized" and involved in the conspiracy to deny him care; and was expelled from the clinic for "difficult behavior" and combativeness," "blaming all medical professionals for his condition." (See Exhibit "C-3,"attached hereto).

- Lastly, plaintiff's New York-Presbyterian records are replete with suggestions that plaintiff is paranoid and in need of psychiatric care. (See e.g. Exhibits "C-4 and C-5," attached hereto).

It should also be noted, that the Amended Complaint also demands over $564 billion in relief. At the last status conference before Your Honor on August 1, 2008, plaintiff stated in open court that he expected a reasonable jury would award him $564 billion at trial.

Based on the record before this Court, it is apparent by a preponderance of the evidence, that regardless of whether plaintiff is mentally sound in some broader sense, he is unfit to litigate this case on his own behalf.[2] Plaintiff has thus far demonstrated that he does not believe the district judge in this matter can or will fairly preside over his case on the sole basis

---

[2] Defendants note that particularly for discovery and settlement purposes, even if plaintiff Lavaud retained a lawyer, his ability to assess his case, determine what evidence is required, and assert what evidence is responsive would still be impaired as is evidenced by plaintiff's earnest $564 billion demand.

- 7 -

that Judge Cogan may be Jewish. Additionally, plaintiff, without any reasonable basis, accused defense counsel of serious misconduct with respect to court subpoenaed documents. Further, any settlement discussion is inconceivable with a plaintiff who legitimately expects a $564 billion jury verdict. These facts alone would be troubling in terms of proceeding with the prosecution of this case, but given the objective evidence – namely medical records (both immediately following the incident and as recently as July 1, 2008) indicating that plaintiff Lavaud suffers from "psychosis" and "paranoia," it is evident that future proceedings and plaintiff Lavaud's rights may be compromised by an inability to accurately perceive events and make appropriate decisions on his own behalf in this litigation. Given that a medical determination is not required, defendants submit that the appointment of a guardian ad litem for plaintiff Lavaud is appropriate at this juncture.

However, in the event that the Court deems a mental examination necessary, defendants request an order for a mental examination pursuant to the Court's duties under Fed. R. Civ. P. 17(C). See Iannazzo v. Pitney Hardin LLP, 04 Civ. 7413 (RCC), 2005 U.S. Dist. LEXIS 495 (S.D.N.Y. Jan. 12, 2005)(finding that a district court need not order a mental examination under Fed. R. Civ. 35(a), because courts also have lesser authority to order a mental examination as part of its greater responsibility under Rule 17(c) to appoint a guardian ad litem to an incompetent litigant). Defendants, are willing to pay the cost of an independent psychiatric examiner to evaluate plaintiff Lavaud's competency should the court deem it necessary.

### C. Conference Regarding Counsel for Ashley and Lutetia and Guardian Ad Litem for Plaintiff Lavaud

Should the Court be inclined to grant defendants' above requests, or deem oral argument necessary before reaching a decision, defendants respectfully request that the court schedule a conference at a date and time convenient to the court regarding the appointment of counsel for Ashley and Lutetia and/or the appointment of a guardian ad litem for plaintiff Lavaud. Further, defendants respectfully request that Frandcise Desmoulins be ordered to attend such a conference to determine whether she may serve as a guardian ad litem for any or all of the plaintiffs. If so, the parties and the Court would be able to avoid the costs associated with another guardian ad litem. If not, defendants respectfully submit that they are continuing to search for other means of obtaining a guardian ad litem without costs to themselves or the Court.

### D. Stay of Discovery While Competency and Infancy Issues are Pending

As a related issue, defendants respectfully request a stay of discovery while a determination of plaintiffs' status is pending. As noted in Point A supra, the Court must decide whether or not plaintiffs Ashley and Lutetia's claims will dismissed or represented by counsel before the case can proceed. Furthermore, defendants respectfully submit that proceeding with discovery while there is a pending dispute as to plaintiff Lavaud's competency would be futile.

At present, defendants contend there are a number of discovery issues to be resolved. For example, plaintiff Lavaud responded to each and every one of defendants' 17 requests for production of documents as follows: "The request to produce documents sets forth in paragraph 'X' of the documents requests is answered as follows: plaintiff LAVAUD HOLD

DESMOULINS will be permitted as requested, according to the plaintiff's answer to interrogatories on records." It is manifestly unclear what such responses mean.

Moreover, plaintiff Lavaud's response to defendants' interrogatories states that his former attorney, Mr. Klein did not comply with Your Honor's order to provide a copy of the case file. If true, this presents a significant issue, but if plaintiff is not competent to litigate it is unlikely that a satisfactory resolution will be achieved.

Similarly, plaintiff Lavaud identified some 36 "persons of interest" in his initial disclosures, including a Dean of John Jay College. It is highly unlikely that defendants would be able to investigate and potentially depose all the witnesses and persons of interest set forth by plaintiff within the discovery period, but more importantly, it is unclear which if any of these persons are of actual import to the case.

As such defendants respectfully request: 1) that plaintiffs Ashley and Lutetia be dismissed from this matter unless an attorney is either retained within 30 days or counsel is appointed to represent them; 2) that a guardian ad litem be appointed for plaintiff Lavaud; 3) that the Court schedule a conference regarding these matters and direct Frandcise Desmoulins to attend such a conference; and 4) that discovery be stayed in this matter until the aforementioned issues have been resolved.

Thank you for your consideration herein.

Respectfully submitted,

_____/S/_____
Douglas W. Heim (DH-5238)
Assistant Corporation Counsel
Special Federal Litigation Division

cc:    Mr. Lavaud Hold Desmoulins (by ECF and first class mail)
       537 Herzl Street, Apt.# D4
       Brooklyn, NY 11212